UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                      Criminal Case No. 15-20351

Hatem Ataya D-3,              Sean F. Cox
                                              United States District Court Judge

    Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT ATAYA'S MOTION TO SUPPRESS EVIDENCE**

In this action, five different defendants are charged with engaging in a health care fraud conspiracy and a conspiracy to pay and receive unlawful kickbacks. The matter is currently before the Court on a Motion to Suppress Evidence filed by Defendant Hatem Ataya, a physician who owns Hatem Ataya, M.D. P.C. and who is alleged to have referred patients to the Tahir Companies. Defendant Ataya's motion challenges five different search warrants that authorized searches of his residence and business offices. He challenges those search warrants on two grounds. First, Ataya seeks a *Franks*[1] hearing and suppression under that doctrine, based upon alleged material misrepresentations of fact and omissions in Agent Fairweather's affidavit. Second, Ataya asserts that the search warrants were overbroad and insufficiently particular. This motion has been fully briefed by the parties and was heard by the Court on February 17, 2016.

As set forth below, the Court shall DENY the motion because Defendant Ataya has not established that he is entitled to a *Franks* hearing, based upon either misrepresentations or

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

omissions in the search warrant affidavit at issue, and he is not entitled to suppression of evidence under that doctrine. The Court also rejects Ataya's overbreadth/particularity challenges.

## BACKGROUND

On June 1, 2015, F.B.I. Special Agent Brian Fairweather applied for, and received, search and seizure warrants for five locations. Those locations are Defendant Ataya's residence in Flushing, Michigan and four of his business offices located in the surrounding area: 1) Subject Premises 1: 971 Baldwin Street, Lapeer, MI; 2) Subject Premises 2: 3400 Fleckenstein Drive, Flint, MI; 3) Subject Premises 3: 3390 North State Road, Davison, MI; 4) Subject Premises 4: 5097 Miller Road, Flint, MI; and 5) Subject Premises 5: 2591 South Shore Drive, Flushing, MI. The items to be seized at the subject premises included medical files and other listed documents as well as electronic records and devices. The time period set forth in the search warrants is from April 1, 2009 through the present.

Agent Fairweather's supporting affidavit provided the following. Agent Fairweather had prior experience investigating criminal health care fraud. His Affidavit states that evidence uncovered during his investigation has revealed that "Ataya and his associates, including his Co-Defendants, and their health-care related companies, have defrauded Medicare" by: "engaging in an ongoing conspiracy to pay and receive illegal health care kickbacks in exchange for the referral of beneficiaries for services covered by Medicare," "submitting false claims for home health care services that were medically unnecessary," "systematically exaggerating or 'upcoding' claims for office visits in order to receive greater Medicare reimbursements;" and "falsely diagnosing patients to justify medically unnecessary treatments/injections." (Affidavit at

9). In support of the requested search warrants, Agent Fairweather's affidavit included information from a confidential source, consensual recordings, and analyses of bank records and relevant Medicare data.

After the search warrants were executed, on June 11, 2015, a federal grand jury returned an indictment against Defendant Ataya and his four Co-Defendants. The five Defendants in this case are identified in the Indictment as follows: 1) Shahid Tahir, a licensed physical therapist in Michigan, who owned or was associated with At Home Network, At Home Hospice, and A Plus Hospice ("the Tahir Companies") 2) Waseem Alam, a licensed physician in Michigan who owns Waseem Alam, M.D. P.C. and Woodward Urgent Care, and is alleged to have provided care there and also referred patients to the Tahir Companies; 3) Hatem Ataya, a licensed physician in Michigan, who owns Hatem Ataya, M.D. P.C. and allegedly referred patients to the Tahir Companies; 4) Manawar Javed, an individual who co-owned A.N.N., Inc.; and 5) Muhammad Tariq, an individual who co-owned A.N.N., Inc.

The business entities described in the Indictment consist of the following, which were all Medicare providers: 1) A.N.N., Inc., d/ba/ At Home Network ("At Home Network"), a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology, and skilled nursing services; 2) A.N.N., Inc. d/b/a At Home Hospice ("At Home Hospice"); 3) A Plus Hospice & Palliative Care Inc. ("A Plus Hospice"); 4) Waseem Alam M.D., P.C., a medical practice; 5) Woodward Urgent Care PLLC ("Woodward Urgent Care"); 6) Hatem M. Ataya, M.D., P.C., a medical practice.

The Indictment charges Ataya, as well as all four of his Co-Defendants, with Conspiracy to Commit Health Care Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349 (Count 1) and

with Conspiracy to Pay and Receive Kickbacks, in violation of 18 U.S.C. §371 - Conspiracy (Count 2).[2]

This matter is currently before the Court on Defendant Ataya's Motion to Suppress Evidence (D.E. No. 85). In his motion, Defendant Ataya challenges all five of the search warrants that were executed at his residence and business offices. Ataya makes two arguments. First, he seeks a *Franks* hearing and asks the Court to suppress evidence seized during the searches, based on alleged material misrepresentations and omissions in Fairweather's affidavit. Second, he appears to challenge all five search warrants as overbroad. Ataya also argues that the *Leon* good-faith exception should not be applied in this case, should the Court find that the warrants lacked probable cause.

The Government opposes Ataya's motion and asserts that he has not met his burden of showing that he is entitled to a *Franks* hearing. It also contends that the Court should reject Ataya's argument that the search warrants are overbroad.

The Court held a hearing on this Motion on February 17, 2016.

**ANALYSIS**

Defendant Ataya's Motion to Suppress challenges all five search warrants that were issued. He challenges those search warrants on two grounds. First, Ataya seeks a *Franks* hearing and suppression under that doctrine, based upon alleged material misrepresentations of fact and omissions in Agent Fairweather's affidavit. Second, Ataya asserts that the search warrants were "overbroad" and insufficiently particular.

---

[2]Defendant Alam faces additional structuring charges and the Indictment also contains forfeiture allegations.

I.     **Is Defendant Ataya Entitled To A *Franks* Hearing?**

Defendant Ataya's Motion to Suppress asserts that the affidavit in support of the search warrant should be held invalid because it: 1) contained material misrepresentations of fact; and 2) omitted crucial information. The Court must determine whether Defendant is entitled to a *Franks* hearing.

A.     ***Franks* Hearing Based On Material Misrepresentations Of Fact**

As explained by the Sixth Circuit in *United States v. Mastromatteo*, 538 F.3d 535 (6th Cir. 2008):

> To obtain a *Franks* hearing, the movant must provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth. The movant must also show that the allegedly false statements were necessary for the magistrate's determination of probable cause. Therefore, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72, 98 S.Ct. 2674 (footnote omitted). What remains of the affidavit establishes probable cause if it "provide[s] the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at" the stated location. *Graham*, 275 F.3d at 504.

*Id.* at 545. Thus, "[t]o deserve a *Franks* hearing to challenge the validity of a search warrant, a defendant must make a substantial preliminary showing of two elements: first, a defendant must show that the affiant included – either knowingly and intentionally or with reckless disregard for the truth – a false statement in the affidavit." *United States v. Brown*, 732 F.3d 569, 575 (6th Cir. 2013). Second, the defendant must establish that the allegedly false statements were necessary to the magistrate's finding of probable cause. Only if both showings are made is an evidentiary hearing warranted. *Id.*

Moreover, with respect to the movant's first hurdle, the United States Supreme Court, in

5

*Franks*, instructed that:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and **those allegations must be accompanied by an offer of proof**. They should **point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained**. Allegations of negligence or innocent mistake are insufficient.

*Franks,* 438 U.S. at 171 (emphasis added).

Here, Ataya's motion asserts that the search warrant affidavit contained material misrepresentations of fact. (*See* Ataya's Motion at ¶ 5) (asserting that "the affidavit misrepresented crucial aspects of the information acquired in the course of the investigation."). But Ataya's brief very broadly asserts that the affidavit "is littered with false, unfounded, and uncorrobrated allegations," (*Id*. at Page 15) and even appears to reference paragraphs of Agent Fairweather's Affidavit that do not exist. (*See* Ataya's Br. at 20) (discussing "the allegations concerning the shared patient data (Paragraphs 76 and 77)" even though Fairweather's Affidavit ends at Paragraph 71). And notably, the only exhibits that Ataya submitted in support of his motion are: 1) Agent Fairweather's Affidavit; and 2) search warrant returns. That is, Defendant did not submit any affidavits or sworn statements in support of his request for a *Franks* hearing.

The Court concludes that Defendant has failed to meet his burden to a *Franks* hearing with respect to any alleged misrepresentations.

Defense Counsel appears to identify Paragraphs 61 and 47 as the portions of the affidavit that contain alleged misrepresentations of material facts.

The challenged portion of Paragraph 61 states that based on Affiant's training and experience "it is common practice" for medical providers "to work from their residences," "to complete paperwork such as medical charts, visit sheets, progress notes and other required medical documentation from their residences," "submit billing from a home computer" and "store past and present patient files at their residence." (Fairweather's Aff. at ¶ 61). Defense Counsel argues that assertion is false, asserting that "[t]he affiant knew not only that the purported 'common practice' is simply no longer common *and* that there was no evidence that Dr. Ataya *ever* completes" such work from his residence. (Def.'s Br. at 12) (emphasis in original).

But Defense Counsel has not made any offer of proof to support his assertion that doing work from home is no longer common practice in the medical community. Moreover, contrary to Defense Counsel's unsupported assertion that there was no evidence that Dr. Ataya ever completed work from home, Fairweather's affidavit includes that "CS1 reported to agents that, on May 20, 2015, Ataya informed CS1 that he completes patient charts for certain patients at his home" and that "CS1 also reported that Ataya inputs chart information into his patients' electronic medical records from his home." (Fairweather's Aff. at ¶ 59).

Paragraph 47 of Fairweather's Affidavit, incorrectly cited as Paragraph 58 in Defendant's brief, is the next paragraph that Defense Counsel appears to believe contains a misrepresentation of fact. (*See* Def.'s Br. at 14). That paragraph states that "[w]hile working in Ataya's offices, CS1 observed that Ataya was billing for purportedly providing more than 24 hours of services per day, which is confirmed by Medicare data. Specifically, the data shows that, for services purportedly provided between January 2006 and April 2015, on over 60 separate days, Ataya

billed Medicare for purportedly providing more than 24 hours of service in a single day." But Defendant Ataya has not made any offer of proof to support his assertion that the paragraph contains any false statements. Rather, Defense Counsel offers only his own conjecture that if Ataya had submitted claims for more than 24 hours in a single day, such claims would be automatically denied by Medicare. He also speculates, again without any offer of proof, that perhaps such a situation could have occurred because "there were multiple providers who used the provider number assigned to Dr. Ataya." (*Id*.).

The Court notes that the body of Ataya's brief also identifies "the allegations concerning the shared patient data (Paragraphs 76 and 77)" as objectionable. (*See* Def.'s Br. at 20). Agent Fairweather's affidavit, however, does not have paragraphs numbered 76 or 77. It ends at Paragraph 71. The Court concludes that Ataya has failed to meet his burden of establishing that he is entitled to a *Franks* hearing based on his allegations that Agent Fairweather's affidavit contains misrepresentations.

### B. *Franks* Hearing Based On Omissions

"Although material omissions are not immune from inquiry under *Franks*," the Sixth Circuit has "recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkins*, 107 F.3d 1213, 1217 (6th Cir. 1997).

The Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). Allegations of material omission are held to a higher standard because of the "potential for endless rounds of

*Franks* hearings" due to potentially "endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Id*. (quoting *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)).

"If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *Atkins*, 107 F.3d at 1217 (citing *United States v. Bonds*, 12 F.3d 540, 568 n. 26 (6th Cir.1993)).

In determining whether to issue a search warrant on the basis of a particular affidavit, a magistrate reviews the affidavit according to the totality of the circumstances and "make[s] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying the hearsay information, there is probable cause." *United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007). The affidavit underlying a search warrant is sufficient to support a finding of probable cause if, based on the totality of the circumstances, it provided the magistrate with a substantial basis for concluding that there was probable cause to issue the warrant. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Thus, the Court must determine if Ataya has make a preliminary showing that Agent Fairweather engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit. Even if Ataya can make such a showing, the Court must then consider the affidavit including the omitted portions and determine if probable cause still exists.

Here, the alleged omissions are that the affidavit "failed to state" that: 1) CS1 worked for

9

the Government as a cooperator for more than a year before she started employment with Ataya (Def.'s Br. at 8); 2) CS1 "had initiated whistleblower suit with the intent of enormous financial gain for her" (*Id.*); 3) that CS1 "was planted at Dr. Ataya's office as an employee by the F.B.I. under the guise of a compliance consultant well versed in Medicare billing issues"(*Id.* at 9); 4) CS1's "modus operandi" "included deliberate flirtatiousness in an effort to suggest the possibility of a romantic and sexual availability to Dr. Ataya, in order to win Dr. Ataya's attention and affection" (*Id.* at 9); 5) that CS1 "assured Dr. Ataya, falsely" that "she was an expert in Medicare laws and regulations" and that conversations occurred in the context of her giving compliance advice (*Id.* at 9); and 6) there were possible explanations as to why Dr. Ataya had submitted claims for deceased individuals or billed for more than 24 hours of service in a single day. (*Id.* at 10-11 & 14-15). Each of these will be addressed below.

Ataya first asserts that the affidavit failed to disclose that CS1 worked for the Government as a cooperator for more than a year before she started employment with Ataya. The Government argues that Ataya has failed to show that Agent Fairweather had an intention to mislead by not omitting that CS1 was already an informant and that, in any event, that is not a critical fact and it does not having any bearing on probable cause. The Court agrees. The Court fails to see how the fact that CS1 was already a confidential source for the government when she began working at Defendants' offices would detract from there being probable cause.

Ataya asserts that the affidavit failed to disclose that CS1 "had initiated whistleblower suit with the intent of enormous financial gain for her." (Def.'s Br. at 8). Ataya's brief does not provide any details, however, or any offer proof, as to any whistleblower suits that CS1 has filed.

Ataya also asserts that the affidavit failed to disclose that CS1 "was planted at Dr. Ataya's

office as an employee by the F.B.I. under the guise of a compliance consultant well versed in Medicare billing issues." (Def.'s Br. at 9). He also asserts that the affidavit failed to disclose that CS1 "assured Dr. Ataya, falsely" that "she was an expert in Medicare laws and regulations" and that conversations occurred in the context of her giving compliance advice. (Def.'s Br. at 9). As the Government notes, Ataya has made no offer of proof as to these assertions. Moreover, even if the affidavit had included that discussions regarding compliance are common in the health care community, that would not detract from Ataya's statements indicating that his diagnoses for certain patients were not warranted (Paragraphs 44 & 46 of Fairweather's affidavit).

Ataya asserts that the affidavit failed to disclose that CS1's "modus operandi" "included deliberate flirtatiousness in an effort to suggest the possibility of a romantic and sexual availability to Dr. Ataya, in order to win Dr. Ataya's attention and affection" (Def.'s Br. at 9). Had the affidavit stated that CS1 acted in a flirtatious manner with Ataya that would have not detracted from the facts establishing probable cause.

The final alleged omission is that the affidavit failed to disclose that there were possible explanations as to why Dr. Ataya had submitted claims for individuals who were deceased or billed for more than 24 hours of service in a single day. (Def.'s Br. at 10-11 & 14-15). Ataya directs the Court to Paragraph 48 of Fairweather's affidavit, that states that a review of Medicare data reveals that, during time period stated, Ataya had billed Medicare for purportedly providing services to beneficiaries after their dates of death. Ataya then faults the affidavit for not speculating as to reasons why that could have possibly occurred, such as patients having misidentified themselves or "mistakes in record keeping." (*Id.*). Similarly, Ataya directs the

11

Court to Paragraph 47 (misidentified as Paragraph 58 in his brief) that states that CS1 had observed, and Medicare data confirmed, that Ataya had billed for more than 24 hours in a single day. Ataya then faults the affidavit for not explaining how he could do that without such claims being automatically denied by Medicare. (*Id*. at 14). Ataya makes no offer of proof to show as to any of those speculative assertions. Moreover, these assertions strike this Court as the kind of "endless conjecture" about "information or other matter that might, if included, may have redounded to the defendant's benefit" that the Sixth Circuit identified as the reason for imposing a higher standard as to omissions that form the basis of request for a *Franks* hearing.

Reviewing courts are to accord the magistrate or issuing judge's probable cause determination "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). Considering the substantial, detailed information provided in Agent Fairweather's affidavit, this Court concludes that probable cause existed that evidence of health care fraud would be found at Defendant Ataya's residence and business offices. Inclusion of the alleged omitted information that Defendant Ataya identifies in his motion does not change that result.

This Court concludes that Defendant Ataya has not established that he is entitled to *Franks* hearing based upon the alleged omissions.

Accordingly, this Court concludes that Defendant Ataya has not established that he is entitled to a *Franks* hearing, based upon either misrepresentations or omissions in the search warrant affidavit, and he is not entitled to suppression of evidence under that doctrine.

## II. Are The Search Warrants Impermissibly Overbroad?

Ataya also argues that warrants issued for his residence and offices were impermissibly broad and lacked specificity. Ataya appears to make two challenges in this respect.[3] First, he contends that the search warrants amount to general warrants because they authorize the seizure of all of his personal and business records. (Def.'s Br. at 6-7). Second, Ataya contends that the seizure of five watches and $94,892.00 in currency was beyond the scope of the warrants. (*Id*. at 15-16).

### A. General Warrants Argument

As explained by the Sixth Circuit in *United States v. Gardiner*, 463 F.3d 445 (6th Cir. 2006):

> General warrants are prohibited by the Fourth Amendment. *Andresen v. Maryland*, 427 U.S. 463, 479, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). "The Fourth Amendment requires warrants to 'particularly describ[e] the place to be searched, and the persons or things to be seized.' " *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir.1991) (citing U.S. Const. amend. IV). "A general order to explore and rummage through a person's belonging is not permitted," rather "[t]he warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *Id*. (citations and quotations omitted). "The degree of specificity required depends on the crime involved and the types of items sought." *Id.*

*Id.* at 471.

The Sixth Circuit has recognized that the issue of whether a warrant lacks the requisite particularity "is best resolved upon examination of the circumstances of the particular case." *United States v. Logan,* 250 F.3d 350, 365 (6th Cir. 2001); *see also United States v. Blair*, 214

---

[3]Ataya also asserts, on page 16, that the search warrants in question "placed **no** limitations – temporal, or by subject" of the records it authorized the agents to seize. (*Id*. at 16) (emphasis in original). But the search warrants at issue were limited temporally (ie., for the period from April 1, 2009 to present).

F.3d 690, 697 (6th Cir.2000) (stating that "the degree of specificity in a warrant must be flexible, depending upon the type of items to be seized and the crime involved").

In numerous cases, the Sixth Circuit has recognized that when the scheme under investigation is complex, a warrant authorizing the seizure of a lengthy list of records is sufficiently particular. *See, e.g., United States v. Gardiner*, 463 F.3d at 471 (finding sufficient particularity in a warrant that allowed seizure of numerous things including "financial documents); *United States v. Abboud*, 438 F.3d 554, 575 (6th Cir. 2006) ("In a business fraud case, the authorization to search for general business records is not overbroad.")

Similarly, the Sixth Circuit has recognized that where the fraudulent activity alleged permeates an entire organization, "law enforcement officials [are] necessarily involved in an examination of an extensive paper trail in order to discover which transactions may have been illegal in nature." *United States v. Logan,* 250 F.3d 350, 365 (6th Cir. 2001). Thus, in *Logan*, the Sixth Circuit upheld the lower court's determination that a search warrant authorizing agents of the government to search for and seize "any records, files, and documents relating to" the loans under investigation satisfied the particularity requirement. *Logan*, 250 F.3d at 363.

This Court rejects Ataya's overbreadth argument that the warrants here were "general warrants." Given the complexity and nature of the conspiracies alleged here, this Court concludes that the warrant stated with particularity the items to be seized at Ataya's residence and business offices. Although the warrant "uses generic terms, Agent Fairweather "could not have known at the time he applied for the warrant what precise records and files would contain information" concerning the alleged health care fraud conspiracy and the alleged conspiracy to pay and receive kickbacks. *United States v. Henson*, 848 F.3d 1374, 1383 (6th Cir. 1988). The

14

description in the warrants is directed toward items likely to provide information concerning Ataya's involvement in the alleged conspiracies and therefore did not authorize the officers to seize more than what was reasonable under the circumstances. *Id.*

### B. Scope Argument Relating to Watches and Currency

Ataya also contends that the seizure of five watches and $94,892.00 in currency was beyond the scope of the warrants. (*Id*. at 15-16). He argues:

> The search warrant for Dr. Ataya's home is a particularly egregious example of these overbroad authorizations to search. On December 4, 2015, the government produced supplemental discovery including a receipt for property seized ("FD-597") from Dr. Ataya's home located at 2591 South Shore Drive, Flushing, Michigan. (included in **DEFENDANT'S EXHIBIT B**). The receipt shows agents seized five watches - three Rolexes, one Omega and one Rado and $94,892.00 in currency. The only source of the purported authority for seizure of the watches and currency appears to be a paragraph 17 of "ATTACHMENT B – ITEMS TO BE SEIZED". This paragraph authorizes the agents to seize "currency or other items of significant value reasonably believed to be proceeds of the illegal activity described in the affidavit for this search." None of the factual averments even approach the necessary showing required before authorizing seizure of these watches and currency. There is no tracing nor even an attempt to show that the watches and the currency were linked in any way to the alleged criminal activity during the alleged period of criminal activity. These items are clearly beyond the scope of the warrant even under the most liberal reading of the application for warrant.

(*Id*.)

To the extent that Ataya argues that there is an insufficient nexus between his residence and offices and the evidence sought in the warrants, the Government persuasively directs the Court to *United States v. Abboud*, 438 F.3d at 572 ("One does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home."). The same is true of proceeds of illegal activity.

That leaves Ataya's argument that the seizure of the watches and currency was beyond

the scope of the warrants.

"Seizing items beyond the scope of a warrants authorization violates the Fourth Amendment rights of the subject of a search." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 554 (6th Cir. 2003) (citing *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976)). The test for whether the officers impermissibly exceeded the scope of the warrant is whether the officer's actions were reasonable. *United States v. King*, 227 F.3d 732, 751 (6tth Cir. 2000).

Here, the search warrant that authorized a search of Ataya's residence authorized the agents to seize "[c]urrency or other items of significant value reasonably believed to be proceeds of the illegal activity described in the affidavit for this search warrant."

In response, the Government takes the position that Ataya's assertion that there are no supporting factual averments to support those seizures is without support. It notes that Ataya "conveniently leaves out the bank record analysis which show[s] over $150,000 in deposits to accounts associated with Defendant from Tahir-related entities." (Govt.'s Br. at 21 n.2). Those allegations are found at page 14 and 15 of Agent Fairweather's Affidavit. The watches that were seized from Ataya's residence are three Rolex watches, a brand known for its high cost, and three other watches, along with over $94,000.00 in cash. The Court concludes that the seizure of the currency and watches was reasonable and rejects Ataya's argument.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant Ataya's Motion to Suppress Evidence is DENIED.

IT IS SO ORDERED.

                                              S/Sean F. Cox
                                              Sean F. Cox
                                              United States District Judge

Dated:  February 18, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 18, 2016, by electronic and/or ordinary mail.

                                              S/Jennifer McCoy
                                              Case Manager