UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA

v.

Case No. 15-CR-20351
Hon. Sean F. Cox

D-3 HATEM ATAYA,

    Defendant.
    _____/

UNITED STATES' MEMORANDUM
IN AID OF SENTENCING

The United States submits this Memorandum in Aid of Sentencing for Hatem Ataya ("defendant"), who is scheduled to be sentenced on February 13, 2019. On June 16, 2015, the grand jury returned an indictment charging the defendant with one count of conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. 1349, and one count of conspiracy to pay and receive kickbacks, in violation of 18 U.S.C. § 371. Docket Entry ("D.E.") 1, Indictment. On October 12, 2018, the defendant pleaded guilty to the health care fraud and wire fraud conspiracy. D.E. 296, Plea Agreement. For the reasons discussed below, the United States requests that the Court: (1) find the Guidelines range to be 78-97 months' imprisonment, and sentence the defendant to a term of imprisonment within that range; (2) impose a three-year term of supervised release; and (3) order defendant to pay restitution in the amount of $4,119,711.29.

## I. BACKGROUND

For more than nine years, the defendant engaged in a multi-million dollar fraud scheme designed to bilk the Medicare program. As a licensed physician, the defendant referred Medicare beneficiaries to home health care and hospice entities owned and controlled by co-defendant Shahid Tahir ("Tahir"), including At Home Network, At Home Hospice, and A Plus Hospice ("the Tahir entities"). The referrals allowed the Tahir entities to bill Medicare for millions of dollars of services that in many cases were unnecessary and not provided. In return for his referrals, the defendant received illegal kickbacks from Tahir and his cohorts.

The defendant's conduct resulted in a loss of approximately $4,119,711.29, the amount that Medicare paid for claims that the defendant had caused to be submitted for home health and hospice services that were illegally induced by kickbacks, medically unnecessary, or not provided.

## II. SENTENCING GUIDELINES

### A. Agreed Upon Guidelines

In the Rule 11 Plea Agreement, the parties agreed to the following:

- Defendant's conduct qualified for a base offense level of 7, U.S.S.G. § 2B1.1(a)(1);

- 18 levels are added based on a loss figure of $4,119,711.29, U.S.S.G. § 2B1.1(b)(1)(J);

- 2 levels are added as a result of a health care fraud offense that resulted in more than $1,000,000 in loss, U.S.S.G. § 2B1.1(b)(7);

- 2 levels are added for abuse of trust as a licensed physician, U.S.S.G. § 3B1.3; and

- 3 levels are deducted for the defendant's acceptance of responsibility, U.S.S.G. § 3E1.1.

The Probation Department agreed with the application of these Guidelines. *See* Presentence Investigation Report ("PSR") at §§ 24-33.

### B. Sophisticated Means

As set forth in the Rule 11 Plea Agreement, the parties disagree as to whether the sophisticated means enhancement applies. For the reasons discussed below, the United States agrees with the Probation Department that the sophisticated means enhancement applies to the defendant. PSR § 58.

Under U.S.S.G. § 2B1.1(b)(10)(C), a 2-level enhancement applies in cases in which "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." Application Note 9(B) explains that "'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Specifically, "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities corporate shells, or

3

offshore financial accounts also ordinarily indicates sophisticated means." U.S.S.G. § 2B1.1 cmt. n.9(B).

Contrary to the assertions in his memorandum, the defendant's conduct involved sophisticated means. The defendant admits that he regularly received kickbacks in exchange for referrals (D.E. 304-1, Def.'s Mem. at 10), but he does not acknowledge the elaborate measures he employed to disguise the source, recipient, and illicit nature of these bribes.

For example, bank records show that the defendant routed his kickbacks through a shell company called "Green Apple Management, LLC."[1] Tahir paid some of these bribes through Professional Services Management, another sham entity incorporated by Tahir's co-defendant brother, Manawar Javed. *See* D.E. 156, Javed Plea & Bond Hr'g Tr. 59:14-60:23, Mar. 18, 2016. The defendant also deposited checks from Tahir that included false notations in the memo line, such as "Rent" or "M.D. Fee." In sum, the defendant received kickbacks from a sham company, deposited kickbacks into the account of another sham company, and deposited fraudulent checks with phony notations. Based on these facts alone, the defendant's conduct falls squarely within the definition of sophisticated means.

---

[1] The financial records were obtained by grand jury subpoena. Therefore, the government has not attached examples of the checks to this memorandum, but will be prepared to provide copies to the Court at sentencing, if necessary.

But there is more. In addition to the direct payments, the defendant also accepted bribes through less traditional methods, such as free labor—an "employee" provided by Tahir who had been in fact was a confidential source for the government—and a free car. The defendant tried to conceal both bribes: he and his co-conspirators generated fake invoices for the confidential source's time,[2] and arranged for Tahir to purchase his old Mercedes so that the defendant had the money to buy a new one.[3]

The defendant does not mention any of this evidence, and instead asserts that his conduct was not sophisticated because "he only referred patients to the Tahir entities if they actually required home health care" and because he "did not create fictitious patients." D.E. 304-1, Def.'s Mem. at 10. As a threshold matter, that does not account for how the defendant concealed his bribes. And in any event, that is false—as part of his plea, the defendant has admitted, under oath, that his referrals were, "at times . . . neither medically necessary nor provided." D.E. 296, Plea Agreement at 3. Accordingly, the sophisticated means enhancement applies. Therefore, the Court should overrule the defendant's objection and find the Guidelines range to be 78-97 months.

---

[2] *See* May 6, 2015 Recording; May 28, 2015 Recording.
[3] *See* February 23, 2014 Recording.

### III. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors for the Court to consider in sentencing the defendant. Factors pertinent to the instant offense are discussed below, and support a Guidelines range sentence.

#### A. Nature and Circumstances of the Offense

In his memorandum, the defendant suggests that he had no "knowledge or gave direction to bill for services not medically necessary or not provided[,]" and that his "fault lay in allowing others to do billing in his name." D.E. 304, Def.'s Mem. at 1. That is demonstrably false, and illustrates a continued failure by the defendant to truly accept responsibility for his offense. The government's investigation revealed that the defendant's entire practice was permeated by fraud. In fact, in conversations with the government's confidential source, many of which were recorded, the defendant admitted that he engaged in the conduct in which he now disavows, including treating non-homebound patients for home care, adding false diagnoses to justify unnecessary procedures, and upcoding patient visits. Indeed, the defendant admitted to the very conduct he now denies in connection with his plea. Thus, the defendant not only accepted kickbacks, but he participated in a widespread fraud that routinely stole from the Medicare program. Accordingly, the nature and circumstances of the offense weigh in favor of a Guidelines range sentence.

### B. History and Characteristics of the Defendant

The defendant is a corrupt physician. Licensed medical doctors like him are intended to be the gatekeepers of Medicare, billing for only those services that are medically necessary and actually rendered, and for services that are not induced through illicit means. The active participation of physicians like the defendant makes health care fraud schemes far more lucrative and difficult to detect, precisely because of the deference given to medical judgment and the trust placed in physicians. Rather than standing as a vigilant guard against the waste of government funds, the defendant knowingly opened the vault doors. His abuse of Medicare's trust was real.

### C. The Need to Provide Adequate Deterrence

The need for deterrence of corrupt physicians is real and urgent. A Guidelines Range sentence would have a particularly significant deterrent effect for physicians who consider compromising their medical integrity for easy money. *See United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) (noting, in a health care fraud case, that "[b]ecause economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence") (internal citations and quotations omitted). Such a sentence would send a needed message that physicians

engaged in fraudulent conduct would pay a substantial price for their criminal actions.

## IV. CONCLUSION

Based on the considerations set forth above, the United States respectfully requests that this Court sentence the defendant to a term of imprisonment within a range of of 78-97 months, impose a three-year term of supervised release, and order the defendant to pay restitution in the amount of $4,119,711.29.

    Respectfully submitted,

    MATTHEW SCHNEIDER
    United States Attorney

    *s/Thomas J. Tynan*
    Thomas J. Tynan

    Thomas J. Tynan
    Trial Attorney
    U.S. Department of Justice
    Criminal Division, Fraud Section
    1400 New York Avenue, N.W.
    Washington, D.C. 20005
    (202) 768-1136

Dated: February 6, 2019    Thomas.Tynan@usdoj.gov

## CERTIFICATE OF SERVICE

      I certify that on February 6, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel for the defendant.

                                    *s/Thomas J. Tynan*
                                    Thomas J. Tynan
                                    Trial Attorney
                                    U.S. Department of Justice
                                    Criminal Division, Fraud Section
                                    1400 New York Avenue, N.W.
                                    Washington, D.C. 20005
                                    (202) 768-1136
                                    Thomas.Tynan@usdoj.gov